(Superior Court of Cincinnati—General Term, March, 1897.)

### THE BROOKS WATERFIELD CO. v. THE I. N. WALKER CO.

---

*Promise to pay debt of another—Statute of Frands—Statute—Original Credit.*

1. Whether or not a promise involving the payment of the debt of another falls within the statute of frauds depend upon the solution of the question whether it is an original undertaking, or collateral and conditional.

2. If the promise is an original undertaking, founded on a legal consideration, it need not be in writing; if it is collateral and conditional, it must be in writing signed by the party to be charged.

3. Whether the promise is original or collatteral depends upon the true intent and meaning of the parties to be gathered from all the circumstances of the case.

4. The true test is, to whom the credit was given.   If the credit was given to the promissor. the promise is original and not within the statute; if to him for whose debt the promise was made, the obligation is collateral and falls within the statute.

5. Important evidence of the intention of the parties is found in the method in which the promissee has entered the transaction in his books.

6. If the promise is made at the instance and for the benefit of the promissor. the agreement need not be in writing signed by him, although incidentally it involves the payment by him of money furnished another by the promissee at his request.

(Decided March 16, 1897.)

HOLLISTER, J.

The Brooks Waterfield Company brought a suit in attachment against Crouch, Davey & Co., a non-resident partnership, and garnisheed The I. N. Walker Company respecting moneys and credits in its lands belonging to defendant in attachment.    The garnishee answered, disclosing the sum of $94.47, which it offered to pay into court.    The plaintiff, dissatisfied with this answer, sued the garnishee by virtue of the provisions of the statute in such case made and provided. The cause was tried to the court below, without the intervention of a jury; whereupon judgment was rendered for the plaintiff in the sum of $247.62, and costs.   Plaintiff's

motion for a new trial having been overruled, it prosecutes error here, as plaintiff in error, against the defendant below, as defendant in error, alleging that the court erred in overruling the motion for a new trial, and in not rendering a judgment for a greater amount.

It appears that the business of The I. N. Walker Company was to sell, on commission, tobacco shipped to it at Cincinnati, by farmers and shippers of that staple in Kentucky, and elsewhere. It was its custom, in the course of its business, to advance sums of money to producers in anticipation of the crops to be shipped by them, taking their promissory notes therefor, repaying itself from the proceeds of sale, remitting the balance, less commissions.

Crouch, Garvey & Co., a firm composed of Charles H. Crouch, and J. R. Garvey; and Charles H. Crouch, individually, were in the business of seeking out growers and shippers of tobacco, and securing their trade for commission men at the tobacco markets.

Dealings were commenced between The I. N. Walker Co., and this firm, and Charles H. Crouch, individually. Through a letter written to it by Crouch, in December, 1889, in which he suggests that he and his partner can be of much service in obtaining shipments, particularly if money is advanced to the growers on their crops, he asserts his willingness to become responsible for any money advanced to farmers, but not to shippers. He ends his letter: "If we should have any trade, I want to know as soon as possible."

Crouch, a short time afterwards, called on The I. N. Walker Co.; the letter was discussed, and it was verbally agreed that Crouch, Garvey & Co. should obtain shipments of tobacco, for which they were to receive, as compensation, $1.50 per hogsgead, from The I. N. Walker Co., and were to make it good for any amount advanced to farmers. When advances were made, Crouch, Garvey & Co's account was charged- the farmer's notes were taken; but it does not appear that that firm was aware of the fact, and the notes, when liquidated or paid, were credited to the account of Crouch, Garvey & Co.

The amount for which judgment was rendered in the court below was admitted by the defendant in its answer, the difference between the $92.00 confessed in the original suit, and the judgment for $247.00 having been paid in the meantime by growers on account of advances made to them.

In addition to the dealings of the character mentioned, Crouch, Garvey & Co bought a quantity of tobacco, the money being furnished by The I. N. Walker Co. To secure them, the tobacco was insured, loss payable to them. This tobacco was destroyed by fire, and the insurance was paid to The I. N. Walker Co.

Of the money thus coming into its hands the defendant seeks to retain the amounts advanced to growers of tobacco, and charged on its books against Crouch, Garvey & Co., and also to be credited with the other amounts as will appear. The plaintiff in error contended that these credits are erroneous: 1 As to the payment by the defendant of $141.71 to C. H. Crouch in his individual account, it was agreed at the argument that this was proper.

2. As to the payment of $162.05 to Oliver Garvey, November 20, 1894. The writ of garnishment was served November 27, 1891. On January 25, 1892, Crouch, Garvey & Co. wrote to The I. N. Walker Co., advising them that Oliver Garvey had nothing to do with that company; that Oliver was entitled to one fourth of the money in the company's hands to their credit; authorized the payment of one-fourth to Oliver, and directed that the letter be retained as a receipt. This was done evidently for defendant's protection, for they had already, a fact not disputed, paid the money to Oliver on the day on which Crouch, Garvey &

Co. were charged in the account, November 20th, 1891, a week before the writ was served. Oliver became a member of the firm in 1891, after plaintiff's account had accrued against the old firm of Crouch, Garvey & Co. It was a new firm. Oliver's interest, therefore, could not be taken for the old firm's debt. This charge was properly made. The third objection to the charges made against Crouch, Garvey & Co. involves the question whether or not The I. N. Walker Co. had the right to retain of moneys coming into their hands on account of their dealings with that firm, sufficient to repay itself for advances made farmers, which that firm had guaranteed the payment of. It is claimed by the plaintiff in error that as Crouch, Garvey & Co. guaranteed the payment of these advances, the contract being to pay the debt of another must be in writing. The letter of December, 1889, being a mere suggestion looking to a more specific future determination of the relation of the parties, the defendant can not avail itself of it as against Crouch, Garvey & Co., and therefore not as against their creditor. Without deciding, but assuming, that the letter suggesting negotiations does not satisfy the statute of frauds, we approach the main question in the case.

The plaintiff in error contends that as the answer expressly alleges that the accounts were guaranteed, that thereby the conclusion must follow that if the contract is not in writing, it cannot be enforced.

This is not the necessary consequence of such an allegation. The facts determine whether or not a guaranty exists, not the statement by the pleader of the legal results attending the facts. Pleading conclusions of law is without legal significance, and if the facts alleged do not warrant the conclusion, the conclusion alleged presents no issuable fact. Railroad Co. v. Wilson, 31 Ohio St., 555, 557 and cases there cited.

The facts show that Crouch, Garvey & Co. in consideration of $1.50 to be paid by the defendant for each hogshead, agreed with it to obtain shipments of tobacco to it from farmers, and to make it good for advances made by it to farmers in anticipation of their crops. If this is an agreement collateral to the agreement between defendant and the farmers to whom it advanced money, there can be no doubt but that it is a contract to pay the debt of another, and, at any rate between the contracting parties, should to be enforced be in writing. On the other hand, if it is an original contract between the parties, a writing signed by the party to be charged is not necessary, and whether the contract belongs to one class or the other depends upon the true intent and meaning of the parties. Birchell v. Master, 31 Ohio St., 331-337.

We must look therefore to the conduct of the parties themselves, and ascertain their intention, if possible. It is doubtless true that a certain credit was given to those to whom money was loaned. The defendant did not, however, part with its money on that credit; but loaned it on the strength of and by virtue of the agreement of Crouch, Garvey & Co. to be responsible for it. The motive which induced the promise was not to secure an advantage to the farmers; but to obtain the consideration to come from the promisee on the sale of every hogshead shipped by the farmers.

The line is sometimes finely drawn between original and collateral promises, the one being without and the other within the statute, and many cases have turned upon the form of language used by the promisor. The Supreme Court of the United States hold that the character of a promise does not depend altogether upon form of expression, but largely upon the situation and understanding of the parties, Davis v. Patrick, 141 U. S. 479. And in that case, at page 487, Justice Brewer, in referring to the clause of the statute of frauds under consideration, says: "The purpose of this provision was not to effectuate but to prevent

wrong. It does not apply to promises in respect to debts created at the instance and for the benefit of the promisor; but only to those by which, the debt of one party is sought to be charged upon and collected from another."

Language to the same effect is employed by Mr. Justice Clifford in Emerson v. Slater, 22 How. 28-43, where many cases are cited in support of the rule. See also Beach on Mod. Law. Cont., 510.

It is not contended that these cases present facts so resembling the contract in question, and its attendant circumstances, that the decisions themselves can be considered as being directly in point; but the rules announced are general, and may, I think, be applied with safety to all cases in which the same principle is involved. The object the promisee had in view was not to obtain an opportunity to lend money to producers of tobacco. That feature of the agreement was incidental, and might never arise. Its purpose was to get shipments of tobacco and make commissions on its sale. It is quite conceivable that the agreement, so far as it embraced the main purpose of the parties, might have been carried out without any occasion for advancements arising at all. Hence it is that the defendant opened no accounts with those to whom it advanced moneys; but charged the account of Crouch, Garvey & Co. with every item. This shows that the defendant looked to them for payment in the first instance. This fact is of much importance in determining whether or not the contract is original or collateral in its character. In Rhodes v. Ledes, 3 S. & P. 212, the court say that: "The uniform, and obviously correct decisions under this statute, have been, that if credit is given to A., a promise by B. to pay the debt, must be in writing, to be obligatory; but if the credit, in the first instance, is given to B., although the consideration passes to A., it is an original undertaking by B., and he is bound to perform it, although, there is no writing." Langdon v. Richardson, 48 Iowa, 610, turned on the fact that the goods furnished to Fountain on Richardson's statement that he would pay for them, were charged to Fountain's account, Richardson also having an account of his own, as did Crouch, Garvey Co in this case. Richardson's promise was held to be within the statute, the credit having been given to Fountain. In Jones v Cooper, 1 Cowp. 227, the defendant ordered goods for Smith, his son-in-law, saying: "I will pay you, if Smith will not." Smith was entered as debtor in the plaintiff's books, and the promise was held to be within the statute.

Shaw, C. J., says in Cahill v. Bigelow, 18 Pick. 369, 371: "The test is this, when the promise is made before the credit is given, to decide whether one promising is an original debtor or a guarantor, namely, whether credit was given to the person receiving the goods. If it was, then such promisor is a guarantor only, undertaking to pay another's debt; if no credit was given to the person receiving the goods, then the promisor is himself the debtor for goods sold to him and delivered to another person by his order. His promise is not to pay the debt of another, and a parol promise, being made upon good consideration, is a good contract at common law, and binds him, and is not within the statute of frauds."

The following cases also support the conclusion reached in this, that Crouch, Garvey & Co. were original and not collateral promisors: Post v. Geoghegan, 5 Daly 216; Chase v. Day, 17 Johns. 114; Dixon v. Frazee, 1 E. D. Smith 32. Hence in an action by defendant against that firm, the statute of frauds could not have been interposed as a defense.

That the garnishee may have the benefit of any equities or set-offs between himself and the debtor in attachment is well settled. Secor v. Witter, 39 Ohio St., 218; Rolling Mill Co. v. Ore & Steel Co., 152 U. S. 596.

As we are of opinion that Crouch, Garvey & Co's. agreement was an original contract to be performed by them, it was competent for the defendant to set off against their money in its hands, the amounts due from them to it for advances made to the farmers.

In this view of the case it is not necessary to decide the question presented by the record whether or not in any event the plaintiff could avail itself of the statute of frauds, even if the defense of the statute could have been plead by Crouch, Garvey & Co. in bar of an action against them by the defendant.

The judgment below is affirmed.

Hunt and Smith, JJ., concur.

Ramsey, Maxwell & Ramsey, for plaintiff in error.

Edward Moulinier, for defendant in error.